John D. LOUGHLIN, Appellee,

v.

CHEROKEE COUNTY, Iowa (Cherokee County Board of Supervisors), Appellant.

No. 84–198.

Supreme Court of Iowa.

March 20, 1985.

John A. Wibe, Co. Atty., for appellant.

John D. Loughlin, Cherokee, pro se.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

McCORMICK, Justice.

This appeal concerns the coverage of the Iowa Public Employees' Retirement System (IPERS). Petitioner John D. Loughlin is a lawyer who was appointed as a part-time judicial hospitalization referee for Cherokee County on April 28, 1976. In 1982 petitioner initiated proceedings before the Iowa Department of Job Service in an effort to be included in IPERS. The department denied his eligibility, and he petitioned for judicial review. Upon review, the district court reversed the department and directed Cherokee County to compute and pay IPERS the employer's contributions from the date of petitioner's appointment. The county appealed, and we reverse the district court.

Judicial hospitalization referees are provided for in Iowa Code section 229.21 (1983). If the judges of a judicial district determine that judges and magistrates are not sufficiently accessible in a county for performance of duties relating to involuntary hospitalization of mentally ill persons, "the chief judge of the district shall appoint in that county a judicial hospitalization referee." § 229.21(1). The referee is required to be an attorney and "shall hold office at the pleasure of and receive compensation at a rate fixed by the chief judge...." § 229.21(2). When the clerk of court invokes the authority of the refer-

ee, the referee "shall thereupon discharge all of the duties imposed upon judges of the district court or magistrates" relating to commitment proceedings. § 229.21(3). A respondent may appeal the referee's decision to a district judge, who hears the matter de novo. § 229.21(4).

Judicial hospitalization referees thus serve the district court in an adjunct capacity. They are not judicial officers but they perform a limited judicial function, subject to de novo review by a district judge in the event of an appeal. In the present case, petitioner serves in a part-time capacity, receiving compensation from Cherokee County based on an hourly rate established by the chief judge.

This case is unaffected by the comprehensive court reorganization statute enacted in 1983. See id. ch. 602 (Supp.1983). The new statute does not change the provisions of section 229.21, and it does not relieve the counties of the obligation to pay hospitalization referees. See Temporary Court Transition Rule 8.4. The case is affected, however, by an amendment to section 97B.41(3)(b). As of July 1, 1984, judicial hospitalization referees are expressly excluded from IPERS coverage. See 1984 Iowa Acts ch. 1285, § 8. Thus the question here is whether petitioner was covered before that date.

The IPERS system is provided for in chapter 97B. It was established in 1953 at approximately the same time as state employees were brought into the federal social security system. See Iowa Code ch. 97C. For purposes of IPERS coverage, the term "employer" includes the State of Iowa and all of its political subdivisions. § 97B.41(3)(a). An "employee" is "any individual who is in employment defined in [chapter 97B]" with a number of stated exceptions. § 97B.41(3)(b).

The problem is that employment is not specifically defined in chapter 97B, although "[e]mployment for any calendar quarter" is defined as "any service performed under an employer-employee relationship under the provisions of this chapter if the remuneration equals or exceeds

three hundred dollars in the calendar quarter." § 97B.41(2).

■ This case was in litigation when section 97B.41(3)(b) was amended to add judicial hospitalization referees to the list of persons excluded from IPERS coverage. From this it can be argued either that the 1984 amendment merely stated what the legislature intended all along or that the amendment changed the law. See Slockett v. Iowa Valley Community School District, 359 N.W.2d 446, 448 (Iowa 1984). Usually an amendment changes the law, but an exception is recognized "when the law is amended as to minor details and some disputed question is made clear by the amendment. In such a case the amendment can be said to cast light on the legislature's earlier intent." Id. We believe the exception applies here. We reach this conclusion because we believe part-time judicial hospitalization referees would not be covered by IPERS even if the amendment had not been made.

■ Apart from the statutory exceptions, chapter 97B covers individuals in an employer-employee relationship with the state or political subdivision. We have no reason to believe the elements of the relationship are any different for IPERS purposes than for common law purposes. Under companion chapter 97C, the Social Security Act definition of employment is relevant. See § 97C.2(2). That definition incorporates "the usual common law rules" for determining the existence of an employer-employee relationship. See 26 U.S.C. § 3121(d)(2) (1985). We find that the relationship is also determined under common law rules for IPERS purposes.

This approach is reflected in the rules adopted by Iowa Department of Job Service for administering IPERS:

An individual is an employee if such individual is subject to control by the agency for whom such individual performs services for wages. The term control refers only to employment and includes control over the way the employee works, where the employee works and

the hours the employee works. The control need not be actually exercised for an employer-employee relationship to exist; the right to exercise control is sufficient. A public official may be an "employee" as defined in the agreement [for social security purposes under chapter 97C] between the state of Iowa and the secretary of health, education and welfare, without the element of direction and control. However, there are certain employees who are not included in the IPERS program. [*See* § 97B.41(3)(b)]. The following lists some employee groups which may raise questions and gives the rule concerning inclusion or exclusion.

.      .      .      .      .

(25) Any physician, surgeon, dentist or member of other professional groups employed full-time by Iowa or its political subdivisions is included; but any member of a professional group who performs part-time service for any public agency but whose private practice provides the major source of income is excluded, except for city attorneys and health officials.

.      .      .      .      .

370 Iowa Admin.Code § 8.5(1).

 We give weight to the interpretation by an agency of the statute it administers. *West Des Moines Education Association v. PERB*, 266 N.W.2d 118, 124–25 (Iowa 1978). Petitioner in this case would be excluded under section 8.5(1)(25) as member of a professional group who performs part-time service for the judiciary. His private practice serves as his main livelihood. In addition, he performs his services like an independent contractor rather than an employee. The job service rule is analogous to the distinction drawn between employees and independent contractors in social security regulations. *See* Treas.Reg. § 31.3121(d)–1(c)(2) (1984) ("In general, if an individual is subject to the control or direction of another merely as the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor.").

 A part-time judicial hospitalization referee has the independence of a judge in conducting commitment proceedings. Although the referee serves at the pleasure of the chief judge, the chief judge does not have control of the referee's adjudications. Upon appeal to a district judge, the matter is simply tried and decided anew. The referee works somewhat like a court-appointed attorney in handling assigned cases. Like the attorney, the referee is compensated on a fee basis. The part-time referee is not on a payroll, does not have regular hours or schedule, and performs services only as needed. No provision exists for the referee to receive vacation or other fringe benefits. In all of the circumstances, we conclude that a part-time judicial hospitalization referee was not eligible for IPERS benefits even before adoption of the 1984 express exclusion. The district court erred in holding otherwise.

REVERSED.