936 F.2d 583
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
MORTGAGE CLEARING CORPORATION, a corporation, Plaintiff-Appellant,
v.
VEREX ASSURANCE, INC., an Insurance company, Defendant-Appellee.
 Nos. 89-5161, 90-5176.
 United States Court of Appeals, Tenth Circuit.
 June 10, 1991.
 
 Before MCKAY, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 In case no. 89-5161, Mortgage Clearing Corporation ("MCC") appeals a district court order granting summary judgment to Verex Assurance, Inc. ("Verex") and denying MCC's request for attorney fees.
 
 BACKGROUND
 
 2
 MCC brought suit seeking recovery from Verex on private mortgage insurance policies insuring over 150 mortgage loans which MCC serviced on behalf of various housing finance agencies, trustees, or lenders. MCC also claimed that Verex improperly cancelled 37 certificates of insurance. In addition, MCC alleged that Verex violated its duty to deal fairly and in good faith.
 
 
 3
 Originally filed in Oklahoma state court, MCC's suit was removed, pursuant to 28 U.S.C. Sec. 1441(a), to the United States District Court for the Northern District of Oklahoma. Thereafter, the Oklahoma Housing Finance Agency and Bank of Oklahoma were allowed to intervene as Plaintiffs. R. Vol. I, Tab 25.
 
 
 4
 After extensive settlement negotiations involving a magistrate, the district court entered a Partial Agreed Judgment that construed various disputed policy terms and thereby provided a vehicle for resolving the parties' disputes regarding insurance coverage and contract interpretation. As a result, all of the mortgage insurance claims were subsequently settled. MCC's cause of action for bad faith and its claim for attorneys' fees, however, remained unresolved and were scheduled for trial. Prior to trial, the district court granted summary judgment against MCC on its bad faith claim and denied its request for attorneys' fees.
 
 DISCUSSION
 
 5
 We review, de novo, a district court's summary judgment order. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). "When a motion for summary judgment is granted, it is the appellate court's duty to examine the record to determine if any genuine issue of material fact was in dispute; if not, the court must determine if the substantive law was correctly applied." Id.
 
 
 6
 The district court held against MCC's bad faith tort claim, as a matter of law, on two separate grounds: 1) MCC is not the proper party in interest to pursue the claim, and 2) under Oklahoma law, MCC could not collect punitive damages in the absence of an actual damage award.
 
 
 7
 From the outset, we note that the district court's order mischaracterizes the relevant cause of action. The order repeatedly refers to it as solely a claim for "punitive damages." R. Vol. I, Tab 115. While this is understandable as a shorthand, it is an incomplete characterization of MCC's remaining cause of action, which is the alleged tort of bad faith settlement of an insurance claim. Under the tort, the plaintiff seeks actual damages, and, in some circumstances, may also be awarded punitive damages. Christian v. American Home Assur. Co., 577 P.2d 899, 904 (Okla.1978).
 
 
 8
 Although both sides to this lawsuit, as oral shorthand, frequently referred to this cause of action as one for "punitive damages," both sides also demonstrated that they understood this separate cause of action was the tort of bad faith settlement of an insurance claim. The first Agreed Pre-trial Order, filed Sept. 6, 1988, bifurcated the pending trial, providing for a first stage,
 
 
 9
 held by the Court, magistrate, or special master without a jury to adjudicate the separate amounts owed, if any, on each claim. A second stage of the trial should be held before a jury to determine whether or not Verex has been guilty of bad faith and, if so, the damages it should be assessed therefor.
 
 
 10
 R. Vol. I, Tab 61 at 17 (emphasis added).
 
 
 11
 The final Pretrial Order, filed on May 17, 1989, also demonstrates the parties' understanding that the remaining cause of action was the tort of bad faith:
 
 
 12
 This is an action by which MCC seeks to recover monetary damages and attorneys' fees for breach of insurance policies issued by Verex. Additionally, MCC seeks the recovery of actual and punitive damages and attorney fees for the alleged failure of Verex to act in good faith with respect to insurance claims settlement.
 
 
 13
 R. Vol. I, Tab 75A at 1 (emphasis added). The final Pretrial Order further stated:
 
 
 14
 The trial of this case has been bifurcated. The issues of bad faith are to be tried to a jury. All other issues are to be tried before the Court without a jury. A partial agreed judgment was entered on December 5, 1988. Other issues have been settled between the parties. The only remaining issues are MCC's attorneys' fees which is a non-jury matter and the bad-faith issues which are to be tried to a jury.
 
 
 15
 Id. at 2. Finally, the final Pretrial Order also stated:
 
 
 16
 The following issues of fact remain to be determined:
 
 
 17
 1. Whether Verex acted in bad faith with respect to the insurance claims involved herein?
 
 
 18
 2. If the answer to issue of fact number 1 is in the affirmative what actual damages, if any, would MCC sustain as a result of the bad faith?
 
 
 19
 3. If the answer to issue of fact number 2 is in the affirmative what exemplary damages, if any, should be awarded?
 
 
 20
 Id. at 3.
 
 
 21
 It is clear that the parties understood, and agreed, that the bad faith tort claim had yet to be litigated. They understood that the claim was broader than a mere assertion of "punitive damages," and that the actual damages resulting from Verex's alleged bad faith remained at issue.
 
 
 22
 Thus, the district court's second legal rationale is flawed. The district court order states:
 
 
 23
 Here, there has not been, and will not be, an award of actual damages in favor of MCC against Verex because the claims of the insureds against Verex have been settled. As a result, even if MCC were classified as an insured for purposes of this lawsuit, the $100 million punitive damages action which MCC claims to have exempted from the settlement negotiations could not be pursued because no actual damages award could be recovered.
 
 
 24
 R. Vol. I, Tab 115 at 14 (emphasis added).
 
 
 25
 Contrary to the district court's assertion, MCC's alleged bad faith damages stand quite apart from the underlying contract claims that were settled. Oklahoma law is clear on this point. See Roach v. Atlas Life Ins. Co., 769 P.2d 158, 162 (Okla.1989) (Plaintiff was allowed to pursue the separate bad faith claim even though defendant had been dismissed from liability on the contract.). The fact that there were no actual damages awarded on MCC's contract claim[1] is wholly irrelevant to whether actual damages may be demonstrated on the bad faith tort claim. It should not be too surprising that MCC has not been awarded actual damages on a claim that has not yet been litigated.
 
 
 26
 The district court's other legal rationale is that MCC is not a real party in interest to pursue the bad faith tort claim. We disagree with both the factual and legal analysis underlying this conclusion.
 
 
 27
 The district court's order implies that MCC did not assert its bad faith claim until after the coverage claims had been settled with the various insureds. The order also suggests that the settling magistrate believed the entire lawsuit had been settled, and no claims remained. Neither suggestion is supported by the record.
 
 
 28
 MCC pressed its own bad faith cause of action in the original complaint, and at every available opportunity thereafter. The original complaint states:
 
 
 29
 By reason of the refusal to pay and because of the wilful, deliberate, arbitrary, and capricious conduct and bad faith of said defendant the plaintiff and the insureds have been damaged by being deprived of money lawfully owed, by work and expense of continued administration of said loans and oversight and preservation of property securing them, by incurring attorney fees and expenses of collection, by exposing them to liability for failure to collect monies owed. Plaintiff and the insureds have been delayed, inconvenienced, and subjected to hardship and expense to their great damage.
 
 
 30
 R. Vol. I, Tab 1 at 4. A significant part of the original complaint focused on the damage to MCC as servicer of the loans. MCC alleged it had been damaged and explicitly explained why. Moreover, as quoted above, both pre-trial orders explicitly stated that the bad faith tort cause of action was separate from the underlying contract claims.[2]
 
 
 31
 Nor is there support in the record for the assertion that Magistrate Wolfe believed all of the lawsuit had been settled. And even if he did, such a belief would have been patently unreasonable. First, the document resulting from the settlement conferences was called a Partial Agreed Judgment. Second, it made no reference whatsoever to the separate bad faith tort claim found in the complaint and the pretrial order. On its face, the Partial Agreed Judgment merely purports to interpret various contract terms in dispute, and provide a framework for resolving future similar disputes. It does not purport to settle the entire lawsuit. R. Vol. I at Tab 72.
 
 
 32
 As for the law, the insurer's duty to deal fairly and in good faith was set out by the Oklahoma Supreme Court in Christian v. American Home Assurance Co., 577 P.2d 899, 901 (Okla.1977). In the subsequent case of Roach v. Atlas Life Ins. Co., 769 P.2d 158, 161 (Okla.1989), the Oklahoma high court addressed the scope of standing to bring the bad faith tort. It held there must be "either a contractual or statutory relationship between the insurer and the party asserting the bad faith claim before the duty arises." Id. (emphasis added).[3]
 
 
 33
 The district court's order cites to Christian and Roach, but then declares, ipse dixit, that "no contractual or statutory relationship" exists between MCC and Verex. It is certainly arguable, however, that both exist.
 
 The pool policies provide:
 9. To Whom Provisions Applicable
 
 34
 The provisions of this Policy shall insure to the benefit of and be binding upon the Company, the Insured, and any Servicer and their successors and assigns.
 
 
 35
 R. Vol. I, Tab 115, Exhibit B (emphasis added).
 
 
 36
 This provision suggests a contractual relationship between Verex as insurer and MCC as servicer.[4] Moreover, the statutory relationship referred to in Roach is that of a third party beneficiary. Roach v. Atlas Life Ins. Co., 769 P.2d at 161 (citing OKLA.STAT. tit. 15, Sec. 29 (1981 and Supp.1984)). And the above-quoted policy provision also suggests that MCC may be a beneficiary of the insurance policies. At any rate, without deciding the issue ourselves, we hold that the district court did not meaningfully address whether, under Oklahoma law, a sufficient contractual or statutory relationship exists between MCC and Verex.[5]
 
 
 37
 For the above-stated reasons, we hold that the district court improperly granted summary judgment. If, upon applying Oklahoma law to the facts of this case, the district court determines that Verex owes MCC the duty to deal fairly and act in good faith, the following questions of fact, as set out in the final Pretrial Order, remain to be tried:
 
 
 38
 1. Whether Verex acted in bad faith with respect to the underlying insurance claims?
 
 
 39
 2. If the answer to issue of fact number 1 is in the affirmative what actual damages, if any, would MCC sustain as a result of the bad faith?
 
 
 40
 3. If the answer to issue of fact number 2 is in the affirmative what exemplary damages, if any, should be awarded?
 
 
 41
 R. Vol. I, Tab 75A at 3.
 
 
 42
 We also note, however, that MCC's claim is solely its own. MCC contends on appeal that it represents the claims of the six other insureds who did not "disclaim" their interest in a bad faith claim. This contention is directly contrary to MCC's assertion before the district court below: "MCC is suing in its own right for its damages and no other party's damages. MCC does not contend that the "bad-faith" cause of any entity has been assigned to it." Plaintiff's Trial Brief on the Issue of Real Party in Interest, R. Vol. I, Tab 89 at 10. We hold MCC to its earlier assertion. The insureds are capable of and responsible for bringing any tort claims on their own behalf.
 
 
 43
 In addition, we affirm the district court's order with respect to the denial of MCC's attorneys' fees for services performed in connection with the settlement of the underlying coverage claims. For the reasons listed by the district court, MCC was not a prevailing party that could, under Oklahoma law recover attorneys' fees.
 
 
 44
 We vacate, however, the award of costs to Verex that MCC appeals in case no. 90-5176. That award was explicitly based on Verex's prevailing on the summary judgment that we today vacate. Any determination of the appropriate allocation of attorneys' fees and costs for the bad faith tort claim will have to await resolution of that issue in the district court.
 
 
 45
 Accordingly, we AFFIRM the district court's denial of attorneys' fees for MCC on the underlying coverage claims. We VACATE the district court's grant of summary judgment to Verex on MCC's bad faith tort claim, and VACATE the award of costs to Verex on that claim. We REMAND for further proceedings in the district court in accordance with this order.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 We reject MCC's assertion that the Partial Agreed Judgment constituted an award for damages in MCC's favor. It only established a framework for interpreting the insurance policies and settling the coverage claims
 
 
 [2]
 If anything was raised belatedly, it was the district court's sua sponte suggestion to the parties, a year and a half after the suit was initiated and just weeks before it was scheduled to go to trial, that they brief the issue whether MCC was a real party in interest. See Hefley v. Jones, 687 F.2d 1383, 1388 (10th Cir.1982)
 
 
 [3]
 The district court cites three cases for the proposition that the Oklahoma Supreme Court is "limiting, rather than expanding, the application of Christian." R. Vol. I, Tab 115 at 11. But not one of the cases cited actually deals with the duty of good faith imposed upon contracts for insurance. In two of the cases, the Court declines to apply the Christian duty of good faith to employment-at-will contracts; in the other, the Court declines to apply it to commercial loans. None of them cite to or modify Roach (two of them pre-dated Roach )
 
 
 [4]
 Indeed, Verex referred to this contractual relationship with MCC in its Answer, which alleged that MCC had "breached the implied covenant of good faith and fair dealing in MCC's contractual obligations to Verex." R. Vol. I, Tab 6 at 3. Verex incorporated the same allegation in its amended answer. R. Vol. I at Tab 18
 
 
 [5]
 The district court did address, as do the parties at great length on appeal, whether or not MCC is "insured" under the contract. This is part of but not the entire legal question under Oklahoma law. Under Roach, MCC may have an actionable contractual or statutory relationship with Verex without being directly insured