Question Submitted by: General Myles Deering, Executive Director, Oklahoma Department of Veterans Affairs
2017 OK AG 8
Decided: 08/28/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 8, __ __

 
¶0 This office has received your request for an official Attorney General opinion in which you ask, in effect, the following question:
¶1 Whether proceeds from the sale of real property under the jurisdiction of the Oklahoma Department of Veterans Affairs must be deposited in (1) the Maintenance of State Buildings Revolving Fund established by 62 O.S.Supp.2016, § 908(H), or, alternatively, (2) the Capital Improvement Revolving Fund created pursuant to 72 O.S.Supp.2016, § 63.19(D)? 
I.
Background
¶2 The Oklahoma Department of Veterans Affairs ("ODVA") is a cabinet-level department administered by the Oklahoma Veterans Commission through rules, regulations, and policies promulgated by the Commission. 72 O.S.Supp.2016, § 63.1; see also id § 63.3. ODVA has broad authority over providing care and assistance to military veterans, including making and entering into contracts to finance hospitals, healthcare facilities, and Oklahoma Veterans Centers. See id. §§ 63.1, 63.12, 63.13, 202. ODVA is also authorized to acquire and manage real property in certain circumstances, see id. § 63.19, but the statute does not provide specific procedures for the sale or other disposition of such property. Accordingly, ODVA must follow the procedure set forth in Title 61, Section 327 in order to sell a parcel of real property. See A.G. Opin. 1984-86, at 155 ("Where a Department/Commission has no specific procedures for the disposition of real property, we look to the procedures set forth in [Section 327]").
II.
Discussion
¶3 Title 61, Section 327 of the Oklahoma Statutes sets forth the general procedures governing State-owned real property transactions. 61 O.S.Supp.2016, § 327. A sale of such property is triggered by an agency's request to the Office of Management and Enterprise Services ("OMES") to sell a parcel of real property as authorized by: (1) specific legislation, (2) the Long-Range Capital Planning Commission, or (3) a determination that the property is "no longer needed." Id. § 327(B)(1). While the Legislature has provided for these three avenues to sell State-owned real property, the Long-Range Capital Planning Commission ("Commission") is charged with the ultimate authority to approve all transfers of State-owned real property. 74 O.S.Supp.2016, § 61.8(F). The only State entities exempt from this approval requirement are the Oklahoma Ordnance Works Authority ("OOWA"), the Commissioners of the Land Office ("CLO"), the Oklahoma Department of Transportation ("ODOT"), and the Oklahoma Turnpike Authority ("OTA"). Id. § 61.8(H).
A. The Long-Range Capital Planning Commission's role in transfers of State-owned real property.
¶4 The Long-Range Capital Planning Commission was created in 1992 as a part of the State Capital Improvement Planning Act, codified in Title 62, Sections 900 and 901. See 1992 Okla. Sess. Laws c. 330, §§ 1, 2. Under the State Capital Improvement Planning Act, the Commission "advise[s] and assist[s] the Legislature in providing for real property capital facility needs for this state." 62 O.S.Supp.2016, § 901(A). This advice and assistance is provided primarily through the preparation of an annual capital budget plan and a State capital plan that addresses "the state capital facility needs for the next ensuing eight (8) years." Id. § 901(F)(1). For some twenty (20) years, the focus of the Commission was on planning for the immediate and future building needs of the State's capital facilities.[1]
¶5 In 2013, the Legislature expanded the Commission's role by enacting what is now codified at Title 74, Section 61.8. See 2013 Okla. Sess. Laws c. 209, § 2. Section 61.8 requires the Commission to "work to decrease the amount of property owned by Oklahoma state government, return state-owned property to private sector ownership, better maintain and utilize the state's needed capital assets and, whenever possible, eliminate the practice of state agencies leasing real property not owned by the state." 74 O.S.Supp.2016, § 61.8(A). Thus, the Commission's purpose grew beyond that of planning for the State's immediate and future capital property needs to centrally managing State-owned property.
¶6 Also in 2013, the Legislature amended Title 61, Section 327-the general procedures for transferring State-owned real property-to permit an agency to seek authorization from the Commission to sell real property.
[2] 2013 Okla. Sess. Laws ch. 209, § 7 (codified at 61 O.S.Supp.2016, § 327(B)(1)(b)).
¶7 In 2014, the Legislature amended Title 74, Section 61.8 by adding subsection F, further broadening the Commission's powers:
No state agency, board, commission or public trust having the state as its beneficiary shall transfer any real property owned by the agency, board, commission or trust to any other state agency, board, commission, state beneficiary trust or any public or private entity unless the transfer is first approved by the Long-Range Capital Planning Commission . . . The Commission shall not approve any transfer unless proceeds from the sale shall be deposited in the Maintenance of State Buildings Revolving Fund as established by Section 908 of Title 62 of the Oklahoma Statutes.
[3]
2014 Okla. Sess. Laws ch. 286, § 1 (codified at 74 O.S.Supp.2016, § 61.8(F)).
¶8 Under the plain and broad language of Section 61.8(F), the Commission must approve or ratify an agency's decision to sell real property, regardless of the underlying authority for the sale. The Commission's approval authority extends to all but four State entities-OOWA, CLO, ODOT, and OTA. 74 O.S.Supp.2016, § 61.8(H). Thus, unless an agency is specifically exempted from Section 61.8, or the statute authorizing the agency to dispose of its property has a phrase such as "notwithstanding any other provision of law to the contrary," obtaining Commission approval is a prerequisite for any sale of State-owned real property. This conclusion is consistent with the Commission's role in overseeing the State's real property assets. See id. § 61.8(A) ("The Long-Range Capital Planning Commission shall work to decrease the amount of property owned by Oklahoma state government, return state-owned real property to private sector ownership, better maintain and utilize the state's needed capital assets, and whenever possible, eliminate the practice of state agencies leasing real property not owned by the state."); 62 O.S.Supp.2016, § 901(A) (creating the Commission to "advise and assist the Legislature in providing for real property capital facility needs for this state").
¶9 At first glance, this requirement to obtain Commission approval might appear to conflict with statutes that grant State agencies like ODVA the authority to transfer real property. See 72 O.S.Supp.2016, § 63.20. However, "when parts of an act are reasonably susceptible of a construction which will give effect to both and to the words of each, without violence to either, such construction should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict." Indep. Sch. Dist. No. 89 v. City of Fed'n of Teachers, 1980 OK 89, ¶ 12, 612 P.2d 719, 722. In this case, the Commission cannot initiate or require an agency to sell a parcel of real property. That authority remains with the agency having jurisdiction over the real property. See generally 61 O.S.Supp.2016, § 327(B)(1) ("Every state agency shall request [OMES] to dispose of real property upon . . ."). The Commission's role is to determine, based upon its knowledge of the totality of State-owned real property as well as its expertise in managing the State's capital facility needs, whether to approve or ratify an agency's decision to sell or otherwise transfer real property once that decision has been made.
¶10 Thus, the requirement to obtain Commission approval pursuant to Section 61.8(F) does not repeal existing statutes authorizing State agencies to dispose of, or otherwise transfer, real property. Rather it simply requires agencies wishing to do so to consult the Commission, which will evaluate the proposed disposition and either approve or disapprove it informed by its overall knowledge of the capital facility needs of the State as a whole. We do not view the inclusion of this additional step in the statutory scheme for disposing of State-owned property as conflicting with statutes that authorize State agencies to sell real property under their jurisdiction. See Roach v. Atlas Life Ins. Co., 1989 OK 27, ¶ 14, 769 P.2d 158, 163 ("Provisions in the same statutory scheme should be given a construction which will result in harmonizing the provisions and giving reasonable effect to both sections without doing violence to either.")
B. Deposit of Proceeds from the Sale of State-Owned Real Property.
¶11 Once an agency requests to dispose of State-owned real property under Title 61, Section 327, OMES reviews the request, including a determination of the legal authority for the sale. Id. § 327(C). In addition, the Commission must also approve the request, if it has not done so already. 74 O.S.Supp.2016, § 61.8(F); see also 61 O.S.Supp.2016, § 327(B)(1)(b) (state agencies may request OMES dispose of real property upon authorization by the Commission). Once OMES and the Commission approve the sale, OMES appraises the property, publishes notice of the sale, and offers the property for sale in accordance with the provisions of Section 327(B)(2). 61 O.S.Supp.2016, § 327(B)(2), (C).
¶12 The Commission "shall not approve any transfer unless proceeds from the sale shall be deposited within the Maintenance of State Buildings Revolving Fund[.]" 74 O.S.Supp.2016, § 61.8(F) (emphasis added). A similar requirement is found in Title 61, Section 327(B)(3), directing that all proceeds from the sale of real property, save expenses, "shall be deposited in the Maintenance of State Buildings Revolving Fund, unless otherwise provided by law." However, unlike the deposit requirement in Section 327(B)(3), Section 61.8(F) does not contain the phrase, "unless otherwise provided by law."
¶13 As noted in your request, the statute governing ODVA specifically provides that "[a]ll proceeds from the use, sale or lease of properties under the control of the Oklahoma Veterans Commission [, and thus ODVA,] shall be deposited in the Capital Improvement Program Revolving Fund
[4] created by Section 63.19 of this title[.]" 72 O.S.Supp.2016, § 63.20. Thus, there are two statutes-Title 74, Section 61.8(F) and Title 72, Section 63.20-directing the deposit of proceeds from the sale of ODVA real property into two different funds. Neither statute provides any exception language such as the phrase "unless otherwise provided by law" found in Title 61, Section 327(B)(3).
¶14 When two statutes conflict, the statute enacted later in time controls over the earlier enacted statute. Boice v. State, 1970 OK 148, ¶ 17, 473 P.2d 241, 245. Section 63.20 of Title 72, directing the proceeds from the sale of ODVA real property into the ODVA Capital Improvement Program Revolving Fund, was enacted in 1999. 1999 Okla. Sess. Laws ch. 348, § 6. Section 61.8(F) of Title 74, which prohibits the Commission from approving a transfer of State-owned real property unless the proceeds are deposited into the Maintenance of State Buildings Revolving Fund, was enacted in 2013. 2013 Okla. Sess. Laws ch. 209, § 2. Because Section 61.8(F) was later enacted[5], proceeds from the sale of ODVA real property must be deposited into the Maintenance of State Buildings Revolving Fund. To the extent Section 63.20 of Title 72 provides otherwise, it was superseded by the enactment of Title 74, Section 61.8(F). See City of Sand Springs v. Dept. of Pub. Welfare, 1980 OK 36, ¶ 28, 608 P.2d 1139, 1151 ("Where statutes conflict in part, the one last passed, which is the later declaration of the Legislature, should prevail, superseding and modifying the former statute, only to the extent of such conflict."). This conclusion is also consistent with the Legislature's change in 2013 to create a more centrally-managed system of State-owned real property. See Section II.A supra.
¶15 Finally, the deposit of proceeds from the sale of ODVA real property into the Maintenance of State Buildings Revolving Fund does not eliminate the ODVA's Capital Improvement Program Revolving Fund or its purpose. Per Title 72, Section 63.19(A), the ODVA Capital Improvement Program Revolving Fund includes donated individual and corporate Oklahoma income tax refunds. Thus, the ODVA Capital Improvement Program Revolving Fund may continue to receive funds from sources other than proceeds from the sale of ODVA real property.
III.
Conclusion
¶16 ODVA lacks specific procedures to sell real property and must therefore use the procedures set forth in Title 61, Section 327. See A.G. Opin. 1984-86, at 155. Further, ODVA must obtain Commission approval before selling or otherwise transferring real property under its jurisdiction regardless of the source of the authorization for the sale under Section 327(B)(1). 74 O.S.Supp.2016, § 61.8(F). Such approval cannot be granted unless the proceeds from the transfer will be deposited in the Maintenance of State Buildings Revolving Fund. Id. Section 61.8(F) contains no "unless otherwise provided by law" language that would except other statutes from this broad requirement. Id. Likewise, the statute requiring proceeds from the sale of ODVA-owned real property to be deposited into the ODVA Capital Improvement Revolving Fund does not contain any saving language such as "notwithstanding any law to the contrary." See 72 O.S.Supp.2016, § 63.20. Thus, the proceeds from the sale of ODVA real property must be deposited into the Maintenance of State Buildings Revolving Fund, not the ODVA Capital Improvement Revolving Fund.
¶17 It is, therefore, the official Opinion of the Attorney General that:
1. The Oklahoma Department of Veterans Affairs must use the procedures set forth in 61 O.S.Supp.2016, § 327 to sell real property that is authorized for sale by the Legislature or the Long-Range Capital Planning Commission, or is no longer needed. See A.G. Opin. 1984-86, at 155.
2. The sale procedures under 61 O.S.Supp.2016, § 327(B) are triggered by a request to the Office of Management and Enterprise Services to sell a parcel of real property falling under Section 327(B)(1).
3. In order to sell or otherwise transfer Department-owned real property, the Oklahoma Department of Veterans Affairs must obtain the approval of the Long-Range Capital Planning Commission as required by 74 O.S.Supp.2016, § 61.8(F). 
4. Under 74 O.S.Supp.2016, § 61.8(F), the Long Range Capital Planning Commission can approve the sale or other disposition of real property subject to the jurisdiction of the Oklahoma Department of Veterans Affairs only if the proceeds from such sale or disposition are deposited in the Maintenance of State Buildings Revolving Fund. 
Mike Hunter
Attorney General of Oklahoma
Abby Dillsaver
General Counsel to the Attorney General
FOOTNOTES
[1] While "capital facility" is not defined by statute, the Commission has defined "capital item" to mean:
an item with a value or cost of $25,000 or more and a useful life of at least five years. It will further mean a group of like items, purchased together or components of one another, with a cost or value of $25,000 or more and a useful life of at least five years. Equipment being leased with the intent to own at the end of the lease terms with the cost or value of $25,000 or more and useful life of at least five years will also be considered capital in nature.
OAC 428:10-1-3.
[2] Prior to this amendment, an agency could request OMES, or its predecessors, to sell real property based on legislative authorization or upon the agency's written determination that the property was no longer needed. See 2012 Okla. Sess. Laws ch. 304, § 818. The 2013 amendment to Section 327 also allowed for OMES-in addition to the requesting agency-to make the "no longer needed" determination. 2013 Okla. Sess. Laws ch. 209, § 7.
[3] Title 62, Section 908 sets forth the Oklahoma Asset Reduction and Cost Savings Program. It requires OMES to gather information on underutilized State-owned properties and publish a comprehensive list of all State-owned properties, to include a sub-list of the five percent (5%) most underutilized properties. Id. § 908(A)-(C). The Program was originally enacted in 2011. 2011 Okla. Sess. Laws ch. 115, § 1. The Maintenance of State Buildings Revolving Fund was created in 2012. 2012 Okla. Sess. Laws ch. 121, § 2.
[4] The Legislature created the Capital Improvement Program Revolving Fund in order to fund the "[ODVA] Equipment and Capital Improvement Program." See 72 O.S.Supp.2016, § 63.19.
[5] Section 61.8(F) is not only the later enacted statute, it is also the later amended statute. See 2015 Okla. Sess. Laws ch. 54, § 37 (amending 74 O.S. 61.8); 2014 Okla. Sess. Laws ch. 212, § 15 (amending 72 O.S. 63.20).

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 27, 769 P.2d 158, 60 OBJ 536, 
Roach v. Atlas Life Ins. Co.
Discussed

 
1970 OK 148, 473 P.2d 241, 
BOICE v. STATE
Discussed

 
1980 OK 36, 608 P.2d 1139, 
City of Sand Springs v. Department of Public Welfare
Discussed

 
1980 OK 89, 612 P.2d 719, 
Independent School Dist. No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, Local 2309 of American Federation of Teachers
Discussed

Title 61. Public Buildings and Public Works

 
Cite
Name
Level

 
61 O.S. 327, 
Procedures for State Agency Transactions to Lease, Acquire, Dispose of, or Transfer Real Property
Discussed at Length

Title 62. Public Finance

 
Cite
Name
Level

 
62 O.S. 908, 
Oklahoma State Government Asset Reduction and Cost Savings Program
Cited

 
62 O.S. 901, 
Long-Range Capital Planning Commission
Discussed

Title 72. Soldiers and Sailors

 
Cite
Name
Level

 
72 O.S. 63.20, 
Transfer of Proceeds from Oklahoma Veterans Commission to Capital Improvement Program Revolving Fund
Discussed at Length

 
72 O.S. 63.1, 
Commission and Department Created - Administration - Successor of Former Commission
Cited

 
72 O.S. 63.19, 
Tax Refund Donation to Oklahoma Department of Veterans Affairs Equipment and Capital Improvement Program
Discussed

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 61.8, 
Long-Range Capital Planning Commission
Discussed at Length